**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NUMBER:

**SOHAIL KIYANI,**

                              Plaintiff,

vs.

**RIC L. BRADSHAW, in his capacity as**
**Sheriff of Palm Beach County, Florida,**

                              Defendants.

_____ /

## COMPLAINT

        COMES NOW Plaintiff, Sohail Kiyani (hereinafter, Kiyani or Plaintiff), by and through

undersigned counsel and sues RIC L. BRADSHAW in his capacity of Sheriff of Palm Beach

County, Florida ("PBSO"), as follows:

## INTRODUCTION & PARTIES

        1.      This is an action for damages, and equitable relief by Plaintiff, Kiyani, against

PBSO for unlawful discrimination under (1) Title VII of the Civil Rights Act of 1964, as amended

by the Civil Rights Act of 1991 ("Title VII") (2) the Florida Civil Rights Act of 1992 ("FCRA")

and (3) the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101 et

seq.

        2.      Plaintiff Sohail Kiyani is a Muslim American of Pakistani descent who has served

as a PBSO law enforcement officer since 2005, achieving the rank of Sergeant in 2014. Kiyani

also obtained a Master's degree in Criminal Justice.

1

3.      Kiyani alleges that immediately following his request to maintain a beard for religious and medical reasons, he began suffering adverse employment actions in that Defendant PBSO instituted an investigation against him, transferred Kiyani to an undesirable location, and due to such relocation, caused Kiyani to suffer a loss of pay, among other things.

4.      Another adverse employment action followed after Kiyani filed his EEOC Charge of Discrimination: Kiyani was denied a promotion despite achieving ***the highest score*** of 42 candidates on the objective component of the exam. A "closed door" and arbitrary "assessment" component of the exam accounts for the plunge in Kiyani's score from 1st to 18th. Those involved in scoring the arbitrary "assessment" were identified in and aware of Kiyani's then-pending EEOC Charge! Worse, Kiyani came to discover the lack of any correlation between the rating sheets and the final assessment scores. Kiyani only accessed this information through a long-resisted Freedom of Information request.

5.      Defendant Ric L. Bradshaw in his capacity as Sheriff of Palm Beach County, Florida, is the Sheriff of Palm Beach County, Florida ("PBSO") as organized and existing under the Constitution and laws of the State of Florida. PBSO is the governmental entity responsible, as a matter of law, for the actions of its officials, agents, and employees, and is responsible for their employment practices.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the action pursuant to 28 U.S.C. §1331, Title VII, and 42 U.S.C. §1983. The Court's supplemental jurisdiction is invoked for the Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

7.     Venue properly lies in this district pursuant to 28 U.S.C. §1391(b) in that Defendant is headquartered within this judicial district, and a substantial part of the events constituting the discrimination have taken place within this judicial district.

## PARTIES AND EXHAUSTION OF REMEDIES

8.     Kiyani has complied with all conditions precedent to jurisdiction under Title VII, the ADAAA, and the FCRA, in that Kiyani dual filed his Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC") and Florida Commission on Human Relations within 300 days of the discriminatory employment practices alleged in this Complaint, the EEOC's investigation included Defendant's failure to promote, which arose after Kiyani filed his Charge; Kiyani has filed this Complaint within ninety (90) days of receiving a Right to Sue notice from the EEOC; 180 have elapsed since the Charge was filed; Kiyani is filing this Complaint within the statute of limitations for the alleged discrimination. Thus, all administrative prerequisites have been satisfied and this suit is timely filed. Kiyani's Charge of Discrimination and Notice of Right to Sue are attached hereto as **Exhibits 1** and **2**.

## FACTUAL ALLEGATIONS

9.     Plaintiff is a Muslim American of Pakistani descent. Upon information and belief, he is the only Pakistani Muslim officer and one of only a handful of Muslims on the force.

10.     Plaintiff joined the PBSO as Deputy Sheriff in 2005. In 2014, he achieved the rank of Sergeant.

### *Background*

11.     On December 30, 2021, Kiyani submitted a memoranda to the Colonel of the Department of Uniform Operations, Antonio Araujo, requesting permission to maintain a beard

for religious and discretionary reasons. Kiyani's request followed a temporary allowance for a fundraiser involving the "best beard Santa lookalike" contest. **Exhibit 3.**

12.      On January 10, 2022, Colonel Araujo denied the request without explanation.

13.      On September 30, 2022, Colonel Araujo emailed:

"CDO's,

Yesterday I witnessed an unshaven deputy. You bet, I took care of it. Again.....grooming, equipment/uniform care/cleanliness, and our driving seem to be reoccurring themes as does the occasional negligence of duty. Where are the sgt's on all this....the Lts? We are not going to look like WPBPD! Get the word out, my tolerances are lessening, and so should yours!

TA"

### *Kiyani's Request for Religious and Medical Accommodation*

14.      Against that backdrop, on **August 20, 2023**, Kiyani informed Lieutenant Humphrey in writing in his chain of command to Captain Addazio, Major Coleman, and Colonel Araujo that Kiyani was submitting a religious and medical accommodation request to the Labor Division, again, for permission to maintain a beard. **Exhibit 4.**

15.      Kiyani submitted his formal request for accommodation to PBSO's Labor Division based on the First Amendment to the US Constitution, Civil Rights Act of 1964, and ADAAA.

16.      Kiyani's accommodation request enclosed a note from a medical provider describing Kiyani's dermatological condition that precludes him from shaving daily: "Pt is Not To shave daily, secondary to...." **Exhibit 5.**

*__Immediate Retaliation__*

17.     Immediately thereafter, and beginning on August 27, 2023, Kiyani came under increased scrutiny **which continued until the two adverse actions occurred.**

18.     Specifically, for months Kiyani had ongoing issues with a new laptop which limited the method by which he "logs in" to his shift.

19.     Due to the glitch with his laptop, Kiyani reverted back to using the "radio login method" (i.e., contacting dispatch) instead of the "Mobile Data Terminal" *aka* MDT Laptop. Beginning in May 2023, Kiyani used the radio login method without incident.

20.     In fact, Kiyani's log ins were audible over the police radio for all to hear in the region from May through August.

21.     Around **August 27th**, six days after Kiyani submitted his accommodation request, Lt. Putnik began inquiring into Kiyani's login method and messaged Kiyani about it.

22.     Kiyani informed Lt. Putnik of the reason: a glitch with a new laptop that prevented Kiyani from using the "Mobile Data Terminal."

23.     Kiyani sought the assistance of IT to fix the ongoing technical issue with the laptop, and it took until September 20th for the problem to be resolved, which related to a control panel in the PBSO issued vehicle, beyond Kiyani's control. Kiyani promptly informed Captain Wingate.

24.     Around this time, Lt. Putnik noted that it had been rumored that Kiyani "hangs out at his house all day long and does not respond to calls for service." ("Rumor").

25.     The Rumor is false (and defamatory).

26.     Unbeknownst to Kiyani, on **September 16th,** Lt. Putnik emailed Lt. Duros requesting information about Kiyani's logins. Lt. Putnik mentioned the Rumor.

27.     On **September 17th**, Kiyani emailed Lt. Humphrey to inform him that Kiyani believed that Lt. Putnik was tracking Kiyani's movement on GPS (i.e., launching an "unofficial" investigation in violation of proper "official" channels). Kiyani expressed concern that Lt. Putnik's "investigation" arose from an unpleasant interaction with Lt. Putnik the prior year.

28.     On **September 18th**, Captain Addazio and Lt. Humphrey contacted Internal Affairs to obtain Kiyani's login data (i.e, to investigate Kiyani).

29.     Once on **September 20th** and a few days prior, Command Duty Officer Captain Wingate, who reports to Colonel Araujo, attended two lineups to examine/enforce uniform and grooming standards, though he rarely attended them previously.

30.     Captain Wingate proceeded to question Kiyani about his laptop issue, though Kiyani had not been questioned about it during the 4 months preceding his accommodation request.

31.     On **September 20th**, PBSO granted Kiyani's request for accommodation, so long as Kiyani maintained a "neatly trimmed" beard.

32.     Kiyani proceeded to grow a "neatly trimmed" beard that was plainly observable.

33.     On **September 21st and 25th**, Kiyani observed Lt. Duros' vehicle parked near the gate to Kiyani's residential community, obviously tracking Kiyani's movement.

34.     Kiyani brought the sudden increase in scrutiny to the attention of Angie Hall at PBSO's Labor Department on **September 26th,** explaining that it occurred immediately after Kiyani submitted his request for religious and medical accommodation. Kiyani expressed concerns over retaliation. **Exhibit 6.**

35.     On **September 28th**, the Labor Division informed Internal Affairs about Kiyani's concerns. Though Kiyani expected his September 26th correspondence to the Labor Division to

be kept confidential, it was made known to Captain Addazio, who instituted the adverse employment action.

36.    Captain Addazio was aware of Kiyani's request for accommodation and referred to it as the "beard issue." She was also aware of Kiyani's concerns that he was being subjected to increased scrutiny in retaliation for his protected actions.

### *Retaliatory Investigation against Kiyani*

37.    Within two hours of Internal Affairs receiving notification of Kiyani's concerns, a review *against* Kiyani was initiated for misconduct over the method by which he logs in through his laptop (the "Login Review"). **Exhibit 7**.

38.    The IA investigation was rushed and conducted in atypical fashion. It resulted in no action and was a pretext to taint Kiyani's record.

### *Adverse Employment Action #1: Transfer to Belle Glade*

39.    On **October 4, 2023**, Captain Addazio informed Kiyani that he was being transferred to the least desirable location in the county—Belle Glade. This transfer came without warning and after six years at Kiyani's current assignment, where Kiyani had the most seniority of all Sergeants.

40.    Transfers to Belle Glade are commonly understood within the ranks to constitute a form of punishment for those who irk their superiors.

41.    In response to Kiyani's concerns about the transfer, Captain Addazio acknowledged the "beard issue" as she put it, and stated that she was "moving[] in a different direction." **Exhibit 8.**

42.    The transfer to Belle Glade is an adverse employment action for the following reasons:

a. **Reduced income**: the transfer decreases Kiyani's workday from a 12 hour shift to an 11.5 hour shift, representing a roughly 5% pay cut.

b. **Limited overtime**: Belle Glade offers fewer opportunities for overtime work.

c. **Loss of Responsibilities**: Belle Glade eliminates supervisory duties, hindering career development and professional growth.

d. **Reduced flexibility**: the lengthy commute and strained childcare arrangements.

e. **Reputational Harm**: false rumor existed that Kiyani "sits home" during his shift instead of reporting to calls, all tied back to the laptop login issue, and has been transferred (read: punished) as a result.

43.     The transfer to Belle Glade is thus not a mere lateral transfer affording the same benefits and opportunities as Kiyani's previous position.

44.     On October 5th, PBSO through Colonel Prieschl, who heads the Department of Professional Standards and Internal Affairs, laughed off Kiyani's concerns of retaliation (that the Belle Glade transfer was retaliation for Kiyani's religious and medical accommodation) as "ridiculous" and stating that PBSO would not be "intimidated" by Kiyani.

45.     Upon information and belief, no other officers have been transferred based on a login issue.

46.     A Caucasian non-Muslim took over Kiyani's position. Then another Caucasian non-Muslim followed.

### ***The EEOC Charge***

47.     On October 12, 2023, Kiyani dual filed a Charge of Discrimination with the EEOC and FCRA, alleging unlawful discrimination and retaliation based on religion and medical accommodation. **Exhibit 1**

8

### *Adverse Employment Action #2: Failure to Promote despite Kiyani*

### *Achieving the Top Score*

48.    On April 30, 2024, with 41 other candidates, Kiyani sat for a promotional exam that is given every two years.

49.    The promotional process consists of three components: a written exam (36%); seniority and education (8%), and a subjective "assessment" (56%).

50.    When combining the points from the written exam and seniority and education (44%), Kiyani earned the highest score, beating out each of the 41 other candidates. He was #1.

51.    PBSO disclosed the promotional exam results, revealing that Kiyani ranked 18th, outside of the promotional range.

52.    It necessarily follows that the subjective "assessment" component caused Kiyani's final ranking to plummet from 1st to 18th.

53.    ***The Arbitrary Assessment.*** The "assessment" consists of 3 oral and 1 written scenario and is scored in five categories: Planning and Organizing, Decision Making, Problem Identification, Interpersonal skills, and Communication Skills.

54.    The oral assessment portion is recorded and later scored.

55.    Two individuals named in Kiyani's EEOC Charge were involved in overseeing or judging the assessment: Captain Nichole Addazio (who transferred Kiyani) and Colonel Prieschl (who laughed off Kiyani's allegations as "ridiculous" and stated they would not be "intimidated" by Kiyani).

56.    Angie Hall was also involved in the promotional exam process and was aware of Kiyani's concerns of retaliation and then-pending EEOC Charge.

57.     Kiyani was ranked as "below average" on the assessment.

9

58.     Critically, there appears to be **no correlation** between the rating sheet that lists criteria pertinent to each category and the final score.

59.     For instance, in the communications skills category, Kiyani was ranked in the bottom 10% despite meeting all or nearly all the requirements listed in the rating sheet.

60.     Kiyani's rating sheet reveals that all or nearly all of the criteria were checked off on the communications skills portion, yet approximately 37 candidates received higher scores.

61.     PBSO's scoring is shrouded in secrecy and PBSO fought to shield this information from Kiyani.

62.     Kiyani successfully challenged PBSO's efforts and was permitted to inspect the ratings sheets in July 2024.

63.     PBSO is in possession of all rating sheets. Kiyani had only a limited opportunity to view the rating sheets as PBSO prohibited note-taking and photocopies per Florida law.

64.     Importantly, PBSO has failed to offer a credible explanation for the stark discrepancies between the rating sheets and final scores.

65.     None of those who scored above Kiyani are believed to have sought a religious and medical accommodation or to have an open EEOC Charge, and those who scored above Kiyani are predominantly Caucasian males, with a handful of African Americans, none of whom are believed to be Muslim, and none of whom requested a reasonable religious and medical accommodation.

66.     Kiyani was clearly more qualified than those who ranked above him and into the promotion range.

67.     Both Captain Addazio and Colonel Prieschl, along with Angie Hall, were aware of Kiyani's recent and pending EEOC Charge at the time they participated in the "assessment."

68.     PBSO has a history of failing to promote minorities and utilizing the arbitrary assessment to control the promotional process.

69.     PBSO is vicariously liable for all material adverse actions suffered and all unlawful discrimination engaged in by Defendant's supervisory employees.

70.     At all times relevant, Angie Hall, Captain Addazio, and Colonel Prieschl were aware of: Plaintiff's request for an accommodation based on religious and medical reasons; Plaintiff's email expressing concern about retaliation, and Plaintiff's filing of an EEOC Charge of Discrimination.

### *The EEOC investigator investigates the Failure to Promote*

71.     Upon Kiyani reviewing the rating sheets and information underlying the promotion results, Kiyani recognized that he had been subject to unlawful discrimination.

72.     Kiyani timely informed the EEOC investigator of the promotion results.

73.     The EEOC's investigation included Kiyani's allegations regarding a failure to promote, which was confirmed to Kiyani in an email. **Exhibit 9.**

### *Conditions Precedent & Attorney's Fees*

74.     Kiyani obtained his Notice of Right to Sue from the EEOC and he has satisfied all conditions precedent to filing this action or those conditions have been waived or otherwise excused.

75.     Kiyani has retained the undersigned counsel to represent him in this action and has agreed to pay reasonable attorney's fees for the Firm's services.

76.     The damages suffered by Kiyani have occurred in the past and are permanent and continuing.

**COUNT I**
**RELIGIOUS DISCRIMINATION UNDER THE FCRA § 760.10, FLA. STAT.**

77.     Plaintiff repeats and realleges Paragraph 1 through 76, as if fully set forth herein.

78.     This is an action for discrimination based upon religion under the FCRA.

79.     Plaintiff belongs to a protected class under the FCRA in that he is of the Muslim faith.

80.     Defendant, through its employees and agents violated the FCRA by discriminating against Plaintiff on the basis of his religion, by subjecting him to unfavorable and disparate treatment compared to non-Muslim employees by:

(1) transferring Plaintiff to Belle Glade;

(2) instituting the Login Review; and

(3) ranking Plaintiff non-promotion eligible despite his qualifications and instead promoting predominantly less qualified non-Muslims.

81.     Defendant's reasons for Plaintiff's transfer, Login Review, and non-promotion eligible score are a pretext to conceal the unlawful nature of Defendant's conduct.

82.     Defendant acted intentionally and with malice and reckless disregard for Plaintiff's rights under the FCRA.

83.     As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to his personal reputation; mental anguish, loss of dignity, and emotional distress, including but not limited to, humiliation and embarrassment and other pecuniary and non-pecuniary losses.

84.     Separately, Plaintiff is entitled to an award of his attorney's fees pursuant to section 760.11, Florida Statutes.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment:

a. Declaring that Defendant violated Plaintiff's rights as protected by the FCRA and ordering Defendant to institute policies, practices, and training that provide protection from discrimination against employees and that eradicate the effects of its past and present unlawful practices;

b. Enjoining and restraining Defendant from engaging in further acts of discrimination;

c. Awarding Plaintiff damages for his lost pay and benefits;

d. Awarding Plaintiff compensatory damages for his emotional distress and related damages;

e. Awarding Plaintiff his reasonable attorney's fees and costs pursuant to the FCRA;

f. Awarding Plaintiff pre-and post-judgment interest;

g. Awarding all further relief as this Court may deem just and proper.

## COUNT II
## DISABILITY DISCRIMINATION UNDER THE FCRA

85. Plaintiff repeats and realleges Paragraph 1 through 76, as if fully set forth herein.

86. This is an action for disability discrimination under the FCRA.

87. Plaintiff belongs to a protected class under the FCRA in that he suffers from a disability, a dermatological condition as described in a medical provider's note provided to Defendant. **Exhibit 5.**

88. Defendant, through its employees and agents violated the FCRA by discriminating against Plaintiff on the basis of his disability, by subjecting him to unfavorable and disparate treatment compared to others without a disability by:

(1) transferring Plaintiff to Belle Glade;

(2) instituting the Login Review; and

(3) ranking Plaintiff below the promotion-eligible range despite Plaintiff scoring first of 42 candidates on the objective component of the exam and by failing to promote Plaintiff and instead promoting predominantly less qualified individuals who had not sought a reasonable accommodation from PBSO's no-beard policy.

89.     Defendant's reasons for Plaintiff's transfer, login review, and non-promotion eligible score are a pretext to conceal the unlawful nature of Defendant's conduct.

90.     Defendant acted intentionally and with malice and reckless disregard for Plaintiff's rights under the FCRA.

91.     As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to his personal reputation; mental anguish, loss of dignity, emotional distress, including but not limited to, humiliation and embarrassment and other pecuniary and non-pecuniary losses.

92.     Separately, Plaintiff is entitled to an award of his attorney's fees pursuant to section 760.11, Florida Statutes.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment:

a.  Declaring that Defendant violated Plaintiff's rights as protected by the FCRA and ordering Defendant to institute policies, practices, and training that provide protection from discrimination against employees and that eradicate the effects of its past and present unlawful practices;

b.  Enjoining and restraining Defendant from engaging in further acts of discrimination;

c.  Awarding Plaintiff damages in an amount to be determined at trial for his lost pay and benefits;

14

d.   Awarding Plaintiff compensatory damages for his emotional distress, embarrassment, and loss of reputation;

e.   Awarding Plaintiff his reasonable attorney's fees and costs pursuant to the FCRA;

f.   Awarding Plaintiff pre-and post-judgment interest;

g.   Awarding all further relief as this Court may deem just and proper.

**COUNT III**
**RETALIATION UNDER THE FCRA**

93.   Plaintiff repeats and realleges Paragraph 1 through 76, as if fully set forth herein.

94.   This is an action for retaliation under the FCRA.

95.   Plaintiff belongs to two protected classes under the FCRA in that he is Muslim and he suffers from a medical disability, a dermatological condition as described in a medical provider's note provided to Defendant.

96.   Plaintiff engaged in statutorily protected activity by: (1) requesting a reasonable accommodation; (2) complaining to PBSO's Labor Division about the retaliation to which he was being subjected in response to his request for an accommodation; and (3) filing an EEOC Charge of Discrimination.

97.   As a result of Plaintiff's statutorily protected activity, Defendant retaliated against Plaintiff and violated the FCRA by transferring Plaintiff to Belle Glade, instituting the Login Review, ranking Plaintiff below the promotion-eligible range despite Plaintiff scoring first of 42 candidates on the objective component of the exam, denying Plaintiff a promotion, and otherwise subjecting Plaintiff to disparate terms and conditions of employment.

98.   Defendant's reasons for the Plaintiff's transfer, Login Review and Plaintiff's non-promotional eligible score are a pretext to conceal the unlawful nature of Defendant's conduct.

99.     Defendant acted intentionally and with malice and reckless disregard for Plaintiff's rights under the FCRA.

100.     As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to his personal reputation; mental anguish, loss of dignity, emotional distress, including but not limited to, humiliation and embarrassment and other pecuniary and non-pecuniary losses.

101.     Plaintiff is entitled to an award of his attorney's fees pursuant to section 760.11, Florida Statutes.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment:

a.   Declaring that Defendant violated Plaintiff's rights as protected by the FCRA and ordering Defendant to institute policies, practices, and training that provide protection from discrimination against employees and that eradicate the effects of its past and present unlawful practices;

b.   Enjoining and restraining Defendant from engaging in further acts of discrimination;

c.   Awarding Plaintiff damages in an amount to be determined at trial for his lost pay and benefits;

d.   Awarding Plaintiff compensatory damages for his emotional distress, embarrassment, and loss of reputation;

e.   Awarding Plaintiff his reasonable attorney's fees and costs pursuant to the FCRA;

f.   Awarding Plaintiff pre-and post-judgment interest;

g.   Awarding all further relief as this Court may deem just and proper.

**COUNT IV**
**RELIGIOUS DISCRIMINATION UNDER TITLE VII**

102.     Plaintiff repeats and realleges Paragraph 1 through 76, as if fully set forth herein.

103.     This is an action for religious discrimination under Title VII.

104.     Plaintiff is a member of a protected class as he is a non-Caucasian Muslim male.

105.     Defendant is a "person" and "employer" as defined in 42 U.S.C. §2000e.

106.     Defendant's conduct as alleged herein violates Title VII which makes unlawful discrimination against employees on the basis of religion.

107.     Defendant violated Title VII when it, among other things, transferred Plaintiff to Belle Glade, instituted the Login Review, ranked Plaintiff below the promotion-eligible range despite Plaintiff scoring first of 42 candidates on the objective component of the exam, denied Plaintiff a promotion, and otherwise subjected Plaintiff to disparate terms and conditions of employment on the basis of religion.

108.     Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's Muslim religion was, at a minimum, a motivating factor in Defendant's adverse employment actions.

109.     As a result of Defendant's unlawful employment practices, Plaintiff has suffered damages, including loss of wages; benefits and other compensation; harm to his personal reputation; mental anguish, loss of dignity, emotional distress, including but not limited to, humiliation and embarrassment and other pecuniary and non-pecuniary losses.

110.     Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard for Plaintiff's rights.

111.     Plaintiff is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff requests judgment against Defendant for damages, interest, costs, fees, declaratory and injunctive relief, and for such other and further relief as the Court may deem just and proper under the circumstances.

**COUNT V**
**RETALIATION UNDER TITLE VII**

112.    Plaintiff repeats and realleges Paragraph 1 through 76 as if fully set forth herein.

113.    This is an action for retaliation under Title VII.

114.    Defendant is a "person" and "employer" as defined in 42 U.S.C. §2000e.

115.    Under Title VII, it is unlawful for an employer to retaliate against any person because that person objected to discrimination, whether formally or informally.

116.    Plaintiff is a member of a protected class.

117.    Defendant's conduct as alleged herein violates Title VII which makes unlawful discrimination against employees on the basis of religion.

118.    Plaintiff engaged in statutorily protected activity by: (1) requesting a reasonable accommodation; (2) complaining to PBSO's Labor Division about the retaliation to which he was being subjected in response to his request for an accommodation; and (3) filing an EEOC Charge of Discrimination.

119.    As a result of Plaintiff's statutorily protected activity, Defendant retaliated against Plaintiff and violated Title VII by transferring him to Belle Glade, instituting the Login Review, ranking Plaintiff below the promotion-eligible range despite Plaintiff scoring first of 42 candidates on the objective component of the exam, denying Plaintiff a promotion, and otherwise subjecting Plaintiff to disparate terms and conditions of employment.

120.    Defendant's reasons for Kiyani's transfer, Login Review, and non-promotional eligible score are a pretext to conceal the unlawful nature of Defendant's conduct.

121.     Defendant's decisionmakers who instituted the adverse employment actions against Plaintiff were aware of Plaintiff's statutorily protected activity.

122.     Had Plaintiff not engaged in statutorily protected activity, he would not have suffered the adverse employment actions alleged herein.

123.     Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's opposition to Defendant's unlawful discriminatory and retaliatory practices were, at a minimum, a motivating factor or the motivating factor in Defendant's adverse employment actions.

124.     As a direct and proximate result of Defendant's conduct alleged herein, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and nonpecuniary losses, along with lost back pay and front pay, interest, overtime and other benefits. These damages have occurred in the past, and are permanent and continuing.

125.     Defendant acted intentionally, willfully, and with malice and/or reckless disregard for Plaintiff's rights.

126.     Plaintiff is entitled to an award of reasonable attorney's fees pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff requests judgment against Defendant for damages, interest, costs, fees, declaratory and injunctive relief, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT VI
## DISABILITY DISCRIMINATION UNDER THE ADAAA

127.     Plaintiff repeats and realleges Paragraph 1 through 76, as if fully set forth herein.

128.     This is an action for disability discrimination under the ADAAA.

129.    Plaintiff is a qualified individual who suffers from a disability, a dermatological condition as described in a medical provider's note provided to Defendant. **Exhibit 5.**

130.    Upon Plaintiff's request for, and permission to maintain a "well trimmed" beard, a reasonable accommodation from the no-beard policy, adverse employment actions by Defendant followed.

131.    Defendant, and its employees and agents, violated the ADAAA by discriminating against Plaintiff with respect to his terms, conditions, or privileges of employment on the basis of his disability.

132.    Specifically, Defendant subjected Plaintiff to unfavorable and disparate treatment by, inter alia,:

    (1)  transferring Plaintiff to Belle Glade;

    (2)  instituting the Login Review

    (3)  ranking Plaintiff below the promotion-eligible range despite Plaintiff scoring first of 42 candidates on the objective component of the exam, denying Plaintiff a promotion, and otherwise subjected Plaintiff to disparate terms and conditions of employment on the basis of religion.

133.    Plaintiff's similarly situated non-disabled colleagues were not subjected to the same adverse actions.

134.    Defendant's reasons for Plaintiff's transfer, Login Review, and non-promotion eligible score are a pretext to conceal the unlawful nature of Defendant's conduct.

135.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's disability was, at a minimum, a determining factor in Defendant's adverse employment actions.

136.     Defendant acted intentionally and with malice and reckless disregard for Plaintiff's rights under the ADAAA such that punitive damages are appropriate under 42 U.S.C § 1981a.

137.     As a result of Defendant's unlawful employment practices, Plaintiff has suffered and continues to suffer damages, including loss of wages; benefits and other compensation; and harm to his personal reputation; emotional distress, including but not limited to, humiliation and embarrassment and other pecuniary and non-pecuniary losses.

138.     Plaintiff is entitled to his reasonable attorney's fees and costs pursuant to 42 U.S.C. §2000e-5(k).

WHEREFORE, Plaintiff requests judgment against Defendant for damages, interest, costs, fees, declaratory and injunctive relief, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT VII
## <u>RETALIATION UNDER THE ADAAA</u>

139.     Plaintiff repeats and realleges Paragraph 1 through 76, as if fully set forth herein.

140.     This is an action for retaliation under the ADAAA.

141.     Plaintiff is a qualified individual who suffers from a medical disability, a dermatological condition that was described in a medical provider's note to Defendant. **Exhibit 5.**

142.     Plaintiff engaged in statutorily protected activity by: (1) requesting a reasonable accommodation; (2) complaining to PBSO's Labor Division about the retaliation to which he was being subjected in response to his request for an accommodation; and (3) filing an EEOC Charge of Discrimination.

143.     As a result of Plaintiff's statutorily protected activity, Defendant retaliated against Plaintiff and violated Title VII by transferring him to Belle Glade, instituting the Login Review, denying Plaintiff a promotion-eligible score despite Plaintiff's top score on the objective

component of the exam, and otherwise subjecting Plaintiff to disparate terms and conditions of employment.

144.    Defendant's decisionmakers who instituted the adverse employment actions against Plaintiff were aware of Plaintiff's statutorily protected activity.

145.    Defendant's reasons for Kiyani's transfer, Login Review, and non-promotional eligible score are a pretext to conceal the unlawful nature of Defendant's conduct.

146.    Even if Defendant had legitimate, non-discriminatory reasons, Plaintiff's opposition to Defendant's employment practices, was, at a minimum, a determining factor in Defendant's adverse employment actions.

147.    Had Plaintiff not engaged in statutorily protected activity, he would not have suffered adverse employment actions.

148.    Defendant acted intentionally, willfully, and with malice and/or reckless disregard for Plaintiff's rights.

149.    As a direct and proximate result of Defendant's conduct alleged herein, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life, and nonpecuniary losses, along with lost and front pay, interest, overtime, and other benefits. These damages have occurred in the past, and are permanent and continuing.

WHEREFORE, Plaintiff requests judgment against Defendant for damages, interest, costs, fees, declaratory and injunctive relief, and for such other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable within this Complaint.

Dated: December 10, 2024

Respectfully submitted,

CRISCIONE RAVALA, LLP
/s/ Galen J. Criscione
By: Galen J. Criscione, Esq.
FL Bar No: 0088593
110 E. Broward Blvd.
Ft. Lauderdale, FL 33301
Ph: (800) 583-1780, Ext. 501
Fax: (800) 583-1787
gcriscione@lawcrt.com
*Attorneys for Plaintiff*